[EDITORS' NOTE: THIS OPINION IS DEPUBLISHED UPON GRANTING OF PETITION FOR REVIEW. THE OPINION APPEARS BELOW WITH A GRAY BACKGROUND.]
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 771 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 772 
OPINION
Donald Smith contends that his statutory right to a speedy trial has been violated and seeks writ relief from the denial of his motion to *Page 773 
dismiss. We agreed and granted the requested relief. The People petitioned for review. The California Supreme Court directed this court to vacate our prior decision and reconsider in light of People v. Sutton (2010) 48 Cal.4th 533
[106 Cal.Rptr.3d 883, 227 P.3d 437] (Sutton). We conclude that Sutton does not alter the statutory analysis on which our prior decision was based. Accordingly, we grant the relief requested by Smith.
I. FACTUAL AND PROCEDURAL BACKGROUND
On February 10, 2009, [1] an information was filed, jointly charging Smith and Christopher Sims with one felony count of first degree residential burglary (Pen. Code, § 459).[2]
Smith was arraigned on February 11, and his statutory right to trial within 60 days of that date (§ 1382) was not waived. April 13 was calculated as the last day for trial. The court was informed on April 10 that counsel for codefendant Sims was ill and unavailable for trial. As to Smith, the court indicated its intent to sever or dismiss because the last day for trial was the following Monday, April 13. However, the People argued that good cause existed to continue the case for both defendants and not to effect a severance.
On April 13, the last statutory day for trial, the court was informed that Sims's counsel remained ill and unavailable. Counsel for Smith objected to any continuance as to his client. The court, however, found good cause to continue the trial for both defendants, noting: "Greenberger [v. SuperiorCourt (1990) 219 Cal.App.3d 487 [267 Cal.Rptr. 849]] says essentially this is an issue [of] whether a joinder overrides defendant's right to a speedy trial. Greenberger says if the only reason to continue a case past the last day is to keep the cases joined, that's not good cause under [section] 1382. . . . But another reason, like, for example, one of the attorneys needs more time to investigate, then — I'm going to interpret that as the situation here — where one attorney is ill and not able to come to court, that does constitute good cause to continue this past the last day for the codefendant, as well as the defendant, who is represented by the ill attorney." The court further indicated: "Today is pretty much still the last day. We will trail it day by day. I have to find out what [Sims's counsel's] condition is, when he can be able to come back, and when he will be able to tell me: Yes, I'm ready to go to trial, [f] So I think the only safe thing to do is trail it day by day and put it over to the 14th."
On April 14 and April 16, the court made further findings of good cause to continue the trial of both defendants, over Smith's objection, due to the *Page 774 
continuing unavailability of Sims's attorney. On April 17, Sims's counsel appeared and stated that he anticipated being ready to try the case in a week. The court found good cause for continuing the matter to April 22, again over Smith's objection, but also indicated: "What we have to do, we have to be sure that I have counsel who's available, in the sense of well enough to do it. But then I will kick it to the last day, and I have to find a courtroom."[3]
On April 23, Sims's counsel remained ill but told the court he would be ready to try the case on April 27. The court stated: "For the record, [Sims's counsel] will be available and ready to try this and fully recovered on Monday, which means thelast day for trial, according to case law, would be 10 daysafter Monday, April . . . 27th. [¶] So by my calculations,May 7th would be the last day." (Italics added.) Smith maintained his objection to further continuances.
On April 27, the court, without discussion and over Smith's objection, "rolled" the case over until April 28. The matter was recalled later that same day, when Smith's counsel was not present, and the following exchange occurred on the record:
"[THE PEOPLE]: Can we recall one more matter? Line 402. It's the Sims matter. [Sims's counsel], can we put that matter over until the 28th? It's a no-time waiver. So I need some clarification on the record from [Sims's counsel].
"THE COURT: [Sims's counsel], on Christopher Simms [sic] we rolled it over until tomorrow. [The prosecutor] needs clarification.
"[THE PEOPLE]: Well, it's past the —
"[SIMS'S COUNSEL]: No. No.
"[THE PEOPLE]: — last day. I just want to —
"THE COURT: It's not past the last day.
"[SIMS'S COUNSEL]: There was a ruling. The last day is May 7th.
"[THE PEOPLE]: Okay. As long as that's clear. [Smith's counsel] has been objecting all this time on the codefendant matter. *Page 775 
"THE COURT: I have it listed as May 7th as the last day."
On April 28, Smith's counsel moved to dismiss. Although the record before us does not include an explicit ruling on the motion, the parties agree that the motion was denied.
After Smith filed a petition for writ of mandate, we stayed the trial court proceedings against him and issued an order to show cause. In a prior opinion, we granted Smith's petition and directed the superior court to enter a new and different order dismissing the information pending against Smith.
The People filed a petition for review. Our Supreme Court granted review and placed the case on hold, pending its decision in Sutton, supra, 48 Cal.4th 533. After the court issued its opinion in Sutton, it transferred this case to us with directions to vacate our prior decision and reconsider the cause in light of that opinion. (Cal. Rules of Court, rule 8.528(d).) As directed, we addressSutton and its application to this case. Because we agree with Smith that Sutton is largely inapplicable to the issues presented here, we reiterate the conclusions reached in our prior opinion.
 II. DISCUSSION
In this case we are required to reconcile the legislatively expressed preference for joint prosecutions with the right of a defendant to a speedy trial. We must interpret and apply the relevant provisions of section 1382, and consider the application and effect, if any, of section 1050.1, enacted by the voters in 1990 in Proposition 115.
"The right to a speedy trial is a fundamental right. [Citation.] It is guaranteed by the state and federal Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) The Legislature has also provided for ` "a speedy and public" trial as one of the fundamental rights preserved to a defendant in a criminal action. (§ 686, subd. 1.)' [Citation.] To implement an accused's constitutional right to a speedy trial, the Legislature enacted section 1382. [Citation.] [f] That section `constitutes a legislative endorsement of dismissal as a proper judicial sanction for violation of the constitutional guarantee of a speedy trial and as a legislative determination that a trial delayed more than [the prescribed period] is prima facie in violation of a defendant's constitutional right.' [Citation.] Thus, an accused is entitled to a dismissal if he is `brought to trial' beyond the time fixed in section 1382. [Citation.]" (Rhinehart v.Municipal Court (1984) 35 Cal.3d 772, 776
[200 Cal.Rptr. 916, 677 P.2d 1206].) *Page 776 
Section 1382, as amended by Statutes 2005, chapter 36, section 1, [4] provided in relevant part: "(a) The court, unless good cause to the contrary is shown,shall order the action to be dismissed in the following cases: [¶] (1) When a person has been held to answer for a public offense and an information is not filed against that person within 15 days, [¶] (2) In a felony case, when a defendant is not brought to trial within 60 days of the defendant's arraignment on an indictment or information, or reinstatement of criminal proceedings. . . . However, an action shall not be dismissed under this paragraph if either of the following circumstances exist: [¶] (A) The defendant enters a general waiver of the 60-day trial requirement. A general waiver of the 60-day trial requirement entitles the superior court to set or continue a trial date without the sanction of dismissal should the case fail to proceed on the date set for trial. If the defendant, after proper notice to all parties, later withdraws his or her waiver in the superior court, the defendant shall be brought to trial within 60 days of the date of that withdrawal. If a general time waiver is not expressly entered, subparagraph (B) shall apply, [¶] (B) The defendant requests or consents to the setting of a trial date beyond the 60-day period. Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (Italics added.) The statute therefore provides for a 10-day "grace period" when continuance beyond the 60-day felony limitation is attributable to "the defendant."
Smith was not brought to trial within 60 days of his arraignment, and it is clear that Smith did not generally waive his speedy trial rights. Smith consistently objected to continuances, and while Smith does not challenge the showing of good cause for the continuances to April 27, no attempt was made by the prosecution to show good cause to continue the trial beyond April 27.[5] The trial court assumed, and the People argue, that dismissal was not compelled because the 10-day grace period to bring the matter to trial, provided to the People by section 1382, subdivision (a)(2)(B), automatically applied to an objecting defendant whose codefendant requested a continuance. Smith contends that Sims's requests for continuance may not be imputed to him. Accordingly, the question is, since section 1382, subdivision (a)(2)(B) provides that the prosecution had the obligation to try Sims on April 27 or within 10 days thereafter (because Sims had requested continuances due to the unavailability of his counsel), does that same 10-day grace period applicable to Sims also apply to the trial of Smith? We conclude that it does not. We also reject the People's argument that section 1050.1 *Page 777 
operates, on these facts and in the absence of goodcause shown, to extend the 10-day grace period to any jointly charged defendant.[6]
A. Standard of Review and Statutory ConstructionPrinciples
A trial court's decision to grant a continuance for good cause is reviewed for abuse of discretion. (Peoplev. Memro (1995) 11 Cal.4th 786, 852-853
[47 Cal.Rptr.2d 219, 905 P.2d 1305]; Hollis v. Superior Court (1985)165 Cal.App.3d 642, 645 [211 Cal.Rptr. 649].) However, statutory construction is a question of law that we review independently. (People v. Love (2005)132 Cal.App.4th 276, 284 [34 Cal.Rptr.3d 6].) To obtain pretrial relief, a defendant denied his or her statutory right to a speedy trial is not required to affirmatively show prejudice from the delay. (Hollis v. Superior Court, supra,165 Cal.App.3d at p. 645; People v. Wilson (1963) 60 Cal.2d 139, 151
[32 Cal.Rptr. 44, 383 P.2d 452].)
The goal of statutory interpretation is to ascertain and effectuate the Legislature's intent. (Peoplev. Standish (2006) 38 Cal.4th 858, 869
[43 Cal.Rptr.3d 785, 135 P.3d 32].) "`In determining such intent, we begin with the language of the statute itself. [Citation.] That is, we look first to the words the Legislature used, giving them their usual and ordinary meaning.' [Citation.]" (Ibid.) "`"If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on [its] face . . . or from its legislative history." ` [Citation.]" (People v. Mackey (1985)176 Cal.App.3d 177, 184 [221 Cal.Rptr. 405].) "Only when ambiguity exists do we `examine the context of the statute, striving to harmonize the provision internally and with related statutes, and we may also consult extrinsic indicia of intent as contained in the legislative history of the statute.' [Citation.] In addition, penal statutes are generally construed most favorably to the defendant. [Citation.] The same principles of statutory interpretation also apply to voter initiatives. [Citation.]" (Ramos v. Superior Court (2007) 146 Cal.App.4th 719,727 [53 Cal.Rptr.3d 189] (Ramos).)
B. Sutton
In Sutton, our Supreme Court considered (1) whether a trial court abused its discretion by finding good cause to delay trial for a defendant, Willie *Page 778 
Jackson, when his appointed counsel unexpectedly remained engaged in an ongoing trial in another case, and (2) if so, whether the trial court abused its discretion in determining that the circumstances also constituted good cause to delay the trial of a jointly charged codefendant, Michael Sutton. (Sutton, supra, 48 Cal.4th at pp. 541-544, 547.) Both Jackson and Sutton argued that their statutory speedy trial rights were violated when, on the 60th day after arraignment, Jackson's appointed counsel was engaged in another trial that had continued longer than anticipated, and the court continued trial on a day-to-day basis for six days over the defendants' personal objections. (Id. at pp. 537-538, 541-545 fn. 5.) The trial court concluded that good cause existed to delay the trial of both the defendants and trial ultimately commenced on the 66th day after arraignment, the same day Jackson's counsel announced that his other trial had been completed. (Id. at pp. 538, 541-544, 553.) The trial court denied both the defendants' motions to dismiss and the Court of Appeal affirmed both the defendants' convictions. (Id. at pp. 542-543, 544-545, 556, fn. 11.)
On review, the Supreme Court noted that neither defendant had consented to having his case brought to trial beyond the 60-day period provided in section 1382 and that, accordingly, resolution of the case required analysis of the "good cause" prong of section 1382, subdivision (a). (Sutton, supra, 48 Cal.4th at p. 546.) The court said: "[I]n general, a number of factors are relevant to a determination of good cause: (1) the nature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay. [Citations.]" (Ibid.)
On the first point under consideration, both the defendants argued that the trial court had erred in concluding that appointed counsel's engagement in another trial constituted good cause to delay Jackson's trial, over his personal objection. (Sutton, supra, 48 Cal.4th at p. 538.) The defendants relied on People v. Johnson (1980)26 Cal.3d 557, 563-564 [162 Cal.Rptr. 431, 606 P.2d 738] (Johnson), which held that a trial court had abused its discretion by finding good cause when a public defender sought continuances over the defendant's personal objection, because he was engaged in another trial and had two other trials scheduled in older cases. (Sutton, at pp. 538, 544-545, 547-551.) The Johnson court stated: "The state cannot reasonably provide against all contingencies which may create a calendar conflict for public defenders and compel postponement of some of their cases. On the other hand, routine assignment of heavy caseloads to understaffed offices, when such practice foreseeably will result in the delay of trials beyond the 60-day period without defendant's consent, can and must be avoided. A defendant deserves not only capable counsel, but counsel who, barring exceptional circumstances, can defend him without infringing upon his right to a speedy trial. Thus the state cannot rely upon the obligations which an *Page 779 
appointed counsel owes to other clients to excuse its denial of a speedy trial to the instant defendant. [¶] . . . [¶] . . . Under these circumstances we think the court should inquire whether the assigned deputy could be replaced by another deputy or appointed counsel who would be able to bring the case to trial within the statutory period. . . . If, on the other hand, the court cannot ascertain a feasible method to protect defendant's right, the court will have no alternative but to grant a continuance; upon a subsequent motion to dismiss, however, the court must inquire into whether the delay is attributable to the fault or neglect of the state; if the court so finds, the court must dismiss." (Johnson,supra, 26 Cal.3d at pp. 572-573, fn. omitted; seeSutton, supra, 48 Cal.4th at p. 551.)
The Sutton court distinguished its prior decision inJohnson, noting that "[t]he circumstances presented inJohnson — in which a lengthy delay in bringing a criminal case to trial was attributable to the state's chronic failure to provide a number of public defenders sufficient to enable indigent defendants to proceed to trial within the presumptive statutory period — are clearly distinguishable" from a brief delay, on a day-to-day basis, in order to permit counsel to complete a trial that ran longer than anticipated. (Sutton, supra,48 Cal.4th at pp. 538, 552-553.) The court emphasized that the delay at issue in the latter situation could not fairly or reasonably be attributed to the fault or neglect of the state. (Id.
at pp. 538, 552-554.) Accordingly, the court rejected the defendants' contention that "the continued engagement of Jackson's counsel in another client's trial could not constitute a legitimate justification for continuing Jackson's trial beyond the 60-day period so as to support a determination of good cause under section 1382." (Id. at p. 556, fn. omitted.) "Having found that the engagement of Jackson'scounsel in another trial constituted a legitimate ground todelay Jackson's trial," the court concluded that "in light of the very brief duration of the delay in the commencement of the trial and the absence of any indication that the delay adversely affected defendants' ability to defend themselves against the charges, the Court of Appeal properly found that the trial court did not abuse its discretion in finding good cause existed to deny Jackson's motion to dismiss the proceeding under section 1382." (Id. at p. 557, italics added, fn. omitted.)
Turning to the issue of whether the trial court erred in finding good cause to continue codefendant Sutton's trial, the court observed: "when, as here, two defendants are jointly charged in an information and thetrial court continues the trial as to one of the defendants forgood cause, section 1050.1 provides that the continuance of the trial as to that defendant constitutes good cause to continue the trial `a reasonable period of time' as to the other defendant in order to permit the defendants to be tried jointly." (Sutton, supra, 48 Cal.4th at p. 558, italics added.) *Page 780 
The court rejected Sutton's argument that the state interests served by a joint trial cannot constitute good cause to delay a codefendant's trial for even a short period of time beyond 60 days. (Sutton, supra, 48 Cal.4th at pp. 560-562.) In so doing, the court noted that Sutton relied on broad language in Sanchez v. Superior Court (1982)131 Cal.App.3d 884, 893 [182 Cal.Rptr. 703] (Sanchez) and Arroyov. Superior Court (2004) 119 Cal.App.4th 460, 465-466
[14 Cal.Rptr.3d 462] (Arroyo) that went beyond the circumstances presented and which suggested that joinder interests can never support a finding of good cause under section 1382. (Sutton, supra,48 Cal.4th at pp. 561-562.)
In Sanchez, one of the jointly charged defendants was in custody and another codefendant was out on bail. The public defender representing the noncustody codefendant obtained a continuance of the trial date because he was engaged in another trial and had two other "must-go" criminal trials immediately thereafter. (Sanchez, supra,131 Cal.App.3d at p. 887.) The Court of Appeal concluded that good cause to continue, as to the objecting incarcerated codefendant, was not shown because the delay was directly attributable to the state's failure to provide a sufficient number of public defenders. (Id. at p. 890.) However, theSanchez court also stated: "We conclude that on balance, whatever unspecified `interests of justice' might be promoted by a joint trial in the underlying prosecution, the state interest cannot be permitted to subordinate the conflicting right of petitioner to a trial within the 60-day period." (Id. at p. 893.)
In Arroyo, the court adopted other language fromSanchez, stating: "The People contend [the] statutory preference for joint trials [embodied in section 1098] trumps a defendant's statutory right to a speedy trial. It does not. `[W]hile the preference for joint trial stated in section 1098 . . . serves judicial economy and the convenience of the court and counsel, such a consideration cannot subordinate the defendant's state constitutional right to a speedy trial without a showing of exceptional circumstances.' (Sanchezsupra,] 131 Cal.App.3d [at p.] 893 . . .; see alsoPeople v. Escarcega (1986) 186 Cal.App.3d 379, 386, fn. 4 [230 Cal.Rptr. 638] [`We reject the People's contention . . . that the desires of the People and codefendant to avoid needless duplication or to obtain an expeditious disposition are relevant factors in determining whether defendant's right to a speedy trial was violated. [Citation.] The law is in fact to the contrary. The preference for a joint trial of jointly charged defendants does not constitute good cause to delay one defendant's trial beyond the time period set forth in . . . section 1382, subdivision 2'].)" (Arroyo,supra, 119 Cal.App.4th at p. 465.)
The Supreme Court explained in Sutton: "[P]ast decisions of this court make it clear that the substantial state interests served by a joint trial *Page 781 
properly may support a finding of good cause to continue a codefendant's trial beyond the presumptive statutory period set forth in section 1382. [Citations.] And numerous Court of Appeal decisions properly have applied this general principle. [Citations.] Furthermore, the provisions of section 1050.1 also clearly establish that the state interest in permitting jointly charged defendants to be tried in a single trialgenerally constitutes good cause to continue a defendant's trial to enable that defendant to be tried with a codefendant whose trial properly has been continued to a date beyond the presumptive statutory deadline. Accordingly, the decisions in [Sanchez], People v. Escarcega,supra, 186 Cal.App.3d 379, and [Arroyo], are disapproved to the extent they hold or suggest that thestate interests served by a joint trial cannot constitute goodcause under section 1382 to continue a codefendant's trial beyond the presumptive statutory deadline." (Sutton,supra, 48 Cal.4th at pp. 561-562, first italics in original, fn. omitted.)
Turning to the circumstances before it, the Sutton
court concluded: "the trial court correctly found that thecircumstance that defendant Jackson's trial properly wascontinued beyond the 60-day period constituted a legitimate and appropriate justification for also delaying codefendant Sutton's trial beyond that period. Further, because the trial court continued Jackson and Sutton's trial on a day-to-day basis and the joint trial ultimately commenced only six days after the 60-day period, the duration of the delay in this case clearly was reasonable. Finally, Sutton makes no claim that the short delay in the commencement of the trial adversely affected his ability to defend the charges against him. [P] Under these circumstances, we conclude the Court of Appeal properly found that the trial court did not abuse its discretion in finding good cause to delay Sutton's trial to permit him to be tried jointly with Jackson and in denying Sutton's motion under section 1382 to dismiss the charges against him." (Sutton, supra,48 Cal.4th at pp. 562-563, italics added.)
As the foregoing summary makes clear, Sutton did not involve a defendant who requests or consents to the setting of trial beyond the 60-day period, pursuant to section 1382, subdivision (a)(2)(B). Thus, the application of the 10-day grace period to a jointly charged codefendant who hasnot consented to trial beyond the 60-day period was not at issue. (See Sutton, supra, 48 Cal.4th at p. 546
["in this case each defendant repeatedly informed the trial court that he was not willing to . . . consent to having his case brought to trial beyond the 60-day period; the trial court, in permitting the matter to trail beyond that period on a day-to-day basis . . . expressly rested its continuance orders on a determination that there was `good cause' for the delay"].) Accordingly, we agree with Smith that Sutton
does not address the main issue presented in this case.
Sutton does address section 1050.1 and the circumstances in which joinder interests will constitute good cause to continue the trial of a defendant whose *Page 782 
jointly charged codefendant's trial has been continuedfor good cause. (Sutton, supra,48 Cal.4th at pp. 558-563.) But, as noted above, no attempt was made here to show good cause to continue either Smith's or Sims's trial beyond the conclusion of Sims's counsel's illness.
No justification was presented for the delay of either Sims's or Smith's trial after April 27. Rather, the People seek to justify the continuance beyond April 27 as to Smith solely on joinder grounds. However, in all of the cases in which joinder interests have been found to outweigh speedy trial rights, some valid justification for delay has been presented — for example, that the continuance was necessary to ensure the codefendant's right to effective assistance of counsel. (See Sutton, supra,48 Cal.4th at pp. 556-557, 562-563 ["trial court correctly found that the circumstance that defendant Jackson's trial properly was continued beyond the 60-day period[, while Jackson's counsel continued to be engaged in an unexpectedly lengthy trial,] constituted a legitimate and appropriate justification for also delaying codefendant Sutton's trial"]; Johnson, supra,26 Cal.3d at p. 570 [noting courts have found good cause for delay caused by defendant's conduct, delay for defendant's benefit, and delay arising from unexpected illness or unavailability of counsel]; Arroyo, supra,119 Cal.App.4th at pp. 466-467 [defendant's right to a speedy trial violated when section 1050.1 did not apply, "absolutely no facts [were] presented to the trial court and hence no weighing by the trial court of the facts and competing interests," and joinder was sole basis for delay of trial], disapproved on other grounds in Sutton, supra, 48 Cal.4th at p. 562;Greenberger v. Superior Court, supra,219 Cal.App.3d at p. 501, fn. omitted ["if the precipitating cause for trial delay is justifiable, such as codefendants' need to adequately prepare for trial, then the section 1098 joint trial mandate constitutes good cause to delay the trial of an objecting codefendant"]; Hollis v. Superior Court, supra,165 Cal.App.3d 642 [upholding determination of good cause as to objecting defendant when codefendants sought continuance to adequately prepare for trial]; Sanchez, supra,131 Cal.App.3d 884, disapproved on other grounds in Sutton,supra, 48 Cal.4th at p. 562; Ferenz v. SuperiorCourt (1942) 53 Cal.App.2d 639 [128 P.2d 48].) The People did not demonstrate good cause to delay Smith's trial beyond April 27.
Contrary to the People's assertion, theSutton court did not overrule Sanchez andArroyo. Rather, the court specifically distinguishedSanchez, but noted that it "contained broad language that went beyond the circumstances presented" and disapprovedSanchez and Arroyo "to the extent they holdor suggest that the state interests served by a joint trial cannotconstitute good cause under section 1382 to continue a codefendant's trial beyond the presumptive statutory deadline." (Sutton, supra, 48 Cal.4th at pp. 560-562, italics added, fn. omitted.) We do not rely on Sanchez orArroyo for that now disapproved proposition. We merely cite Sanchez and Arroyo in support of *Page 783 
the proposition that there must be a valid justification for delay — e.g., to allow the codefendant's counsel to prepare for trial — in order for joint trial interests to constitute good cause to continue the other defendant's trial as well. Sutton in no way detracts from that proposition. (Sutton, supra,48 Cal.4th at pp. 556-557, 560-562.)
The People point out that there is no indication that the delay adversely affected Smith's ability to defend himself and that the delay at issue here was even shorter than that considered in Sutton. The People ignore, however, that these circumstances were only considered relevant to theSutton court's analysis after it was determined that the engagement of Jackson's counsel in another trial constituted good cause to delay Jackson's trial. (Sutton, supra, 48 Cal.4th at pp. 556-557, 562-563.) The Sutton court specified that "a number of factors are relevant to a determination of good cause: (1) thenature and strength of the justification for the delay, (2) the duration of the delay, and (3) the prejudice to either the defendant or the prosecution that is likely to result from the delay. [Citations.]" (Id. at p. 546, italics added.) The People cite no authority, and we know of none, suggesting that minimal delay and lack of prejudice justify violating a defendant's statutory speedy trial rights when no justification has been shown for the delay. In fact, theSutton court stated: "When the prosecution fails to establish adequate justification for the delay, the circumstance that the delay is not likely to prejudice the defendant's ability to present a defense does not, in itself, constitute good cause to avoid a dismissal under section 1382. [Citation.]" (Id. at p. 546, fn. 7.) Nor doesSutton suggest that joinder interests alone excuse violation of a defendant's statutory speedy trial rights when there is no justification for the underlying delay.
Sutton does not address this situation. In our view,Sutton only compels a conclusion that the trial court had good cause to continue Smith's trial to April 27, a conclusion that Smith does not challenge. Accordingly, we proceed to consider whether the 10-day grace period provided for codefendant Sims in section 1382, subdivision (a)(2)(B) applies to Smith. This remains a question of first impression.
C. Plain Language of the Statutory Sections
We conclude that the plain language of section 1382 makes clear that the court erred by applying the statutory 10-day grace period to Smith. The exception to the 60-day rule, provided in section 1382, subdivision (a)(2)(B), is limited to cases when "[t]he defendant requests or consents to the setting of a trial date beyond the 60-day period." (Italics added.) The statute further provides: "Whenever a case is set for trial beyond the 60-day period by request or consent, expressed or implied, of the defendant without a general *Page 784 
waiver, the defendant shall be brought to trial on the date set for trial or within 10 days thereafter." (§ 1382, subd. (a)(2)(B), italics added.) Adopting the People's interpretation would ignore the Legislature's use of the word "defendant," rather than "the defendant, or any jointly charged defendant." Had the Legislature intended that section 1382, subdivision (a)(2)(B), also apply to an objecting codefendant, it could have said so.[7] It did not.
Recognizing that their argument is not supported by the plain language of section 1382, the People argue that section 1050.1 operates, on these facts, to extend the 10-day grace period to any jointly charged defendant. The People cite no authority in direct support of their argument. We cannot read the language of section 1050.1 as expansively as urged by the People.
Proposition 115, enacted by the voters in 1990, added section 1050.1 which provides: "In any case in which two or more defendants are jointly charged in the same complaint, indictment, or information, and the court or magistrate, for good cause shown, continues the arraignment, preliminary hearing, or trial of one or more defendants, the continuance shall, upon motion of the prosecuting attorney, constitute good cause to continue the remaining defendants' cases so as to maintain joinder. The court or magistrate shall not cause jointly charged cases to be severed due to the unavailability or unpreparedness of one or more defendants unless it appears to the court or magistrate that it will be impossible for all defendants to be available and prepared within a reasonable period of time."
Nothing in the text of section 1050.1, or its history, suggests that the electorate intended the 10-day grace period of section 1382 should thereby automatically apply to the trial of an objecting codefendant. Nor is such an *Page 785 
interpretation required in order to harmonize the two statutory sections. The first sentence of section 1050.1 applies only to continuances for "good cause." Thus, this provision operated here to maintain joinder only during the continuances granted through April 27 — thereafter no good cause was shown. Further, the second sentence of section 1050.1 does not require that the 10-day grace period apply to Smith because severance would not otherwise be required due to "unavailability" or "unpreparedness." First, while the trial court initially considered the possibility of severance when Sims's counsel was first unavailable, no motion to sever was made. Second, severance would not have been required if trial had commenced on April 27. Sims's counsel was no longer unavailable or unprepared at that time.
Thus, we agree with Smith that sections 1050.1 and 1382 can be harmonized without applying the 10-day grace period to Smith. As Smith maintains: "Section 1050.1 would have been satisfied by commencement of joint trial on April 27, because there was no good cause for further continuance, and there was no need or request to sever the cases." Contrary to the People's assertion, a statutory preference for joint trial (§§ 1098, 1050.1) does not necessarily mean that an objecting defendant's speedy trial rights must give way to his codefendant's last possible trial date. (See § 1050, subd. (a) ["all proceedings in criminal cases shall be set for trial and heard and determined at the earliest possible time"]; Arroyo,supra, 119 Cal.App.4th at p. 464 [§ 1050.1 permits continuance of defendant's trial beyond the 60 days when codefendant's trial date is continued for good cause, but where codefendant's trial date is not continued for good cause, § 1050.1 "does not provide for the automatic tacking of each newly arraigned codefendant's statutory time to be brought to trial"], disapproved on other grounds in Sutton,supra, 48 Cal.4th at p. 562.)[8] The People essentially argue for automatic tacking of one defendant's last trial date to that of his or her codefendant. Neither section 1050.1 nor section 1382 provides for such tacking.
D. Persuasive Authority Supports Our Interpretation
In addition to the plain language of the statutory provisions, Smith's argument is supported by authority that, although not precisely on point, is instructive. (See Ramos, supra,146 Cal.App.4th 719.) In Ramos, the Second District Court of Appeal considered whether "good cause, attributed from one jointly charged codefendant to another pursuant to section 1050.1, permit[s] the magistrate to set or continue the preliminary hearing for both defendants beyond the 60 days prescribed by section 859b[9] in the absence of a personal waiver of the 60-day rule by both defendants. . . ." (Id. at p. 722.) *Page 786 
Maria Ramos and Dolares Gomez were jointly charged as accessories after the fact to murder. The same complaint charged Efrain Ramos with murder. Maria Ramos was arraigned on February 21, 2006, and a preliminary hearing was set for all the defendants on March 3, 2006. (Ramos, supra,146 Cal.App.4th at p. 723.) On March 3, 2006, the preliminary hearing was continued to April 6, 2006, with the consent of all three defendants. On April 6, 2006, Efrain Ramos requested a four-week continuance, on the ground that he needed additional time to review discovery. Maria Ramos objected to the continuance and also moved to sever her case. (Id. at p. 724.) The magistrate granted the continuance to May 3, 2006, and denied Maria Ramos's motion to sever, reasoning that "under section 1050.1 the good cause found for the continuance as to Efrain Ramos could be used to continue the preliminary hearing as to [Maria] Ramos . . . more than 60 days after arraignment." (Ramos, at p. 724.) Maria Ramos then moved to dismiss the complaint against her on the first day beyond the 60-day period specified in section 859b, and the motion was denied. Maria Ramos filed a petition for writ of mandate and the preliminary hearing for all defendants was eventually held on August 28 and 29, 2006. (146 Cal.App.4th at pp. 724, 726.)
On review, Maria Ramos argued that "because she did not personally waive the 60-day time limit in section 859b, the magistrate was required to dismiss . . . when her preliminary hearing was continued more than 60 days after her arraignment [and that] the magistrate improperly used the joinder provisions in section 1050.1 to create an unauthorized exception to the mandate of section 859b." (Ramos,supra, 146 Cal.App.4th at pp. 726-727.) The court agreed that "inclusion of the defendant's personal waiver as the only express exception to the 60-day rule suggests the Legislature did not contemplate additional exceptions. [Citation.]" (Id. at p. 729.) The court *Page 787 
rejected the People's argument that section 1050.1 provided a basis for the magistrate to conclude that "the good cause found to continue the preliminary hearing as to Efrain Ramos was also applicable to [Maria] Ramos, thereby justifying the continuance of the preliminary hearing as to her in order to maintain joinder of the defendants." (146 Cal.App.4th at p. 731.) Because the plain language of section 859b provided no good cause exception to the 60-day rule, the court concluded that "[t]o import a good-cause exception into the absolute 60-day rule in section 859b, absent the express direction of the Legislature (or the voters by initiative), would constitute an impermissible rewriting of the statute. [Citations.]" (146 Cal.App.4th at p. 732.)
The Ramos court further rejected the argument that "a defendant who has continuously objected to continuances of the preliminary hearing can be deemed to have personally waived the 60-day rule simply because a codefendant has done so [because] [a]ny such holding would effectively read the personal waiver requirement out of the statute and eviscerate the 60-day rule. [Citation.]" (Ramos, supra,146 Cal.App.4th at p. 734.) The court observed that, under the circumstances of the case, "as between the People, who could have proceeded against all defendants albeit without the benefits of joinder, and a defendant who has insisted on her speedy trial rights, there is nothing inherently unfair about visiting the consequences of a codefendant's request to continue a preliminary hearing beyond the 60-day period on the People — who would retain their ability to refile charges against [Maria] Ramos after the mandatory section 859b dismissal. [Citation.]" (Ibid.)
The court recognized that the second sentence of section 1050.1 "expresses the section's strong preference that joinder be maintained [and] confirms that the unpreparedness or unavailability of a defendant, which constitutes good cause to continue the hearing or trial for that defendant, also permits continuance of the preliminary hearing or trial for another jointly charged defendant. . . ." (Ramos, supra,146 Cal.App.4th at p. 735.) However, the court concluded that "severance of [Maria] Ramos's case was required not because her codefendants were unprepared but because her own absolute right to a preliminary hearing within 60 days of arraignment would be violated by a further continuance of the preliminary hearing date. Or phrased somewhat differently, as to [Maria] Ramos the further extension was necessarily more than `a reasonable period of time' in light of her right to insist on a preliminary hearing within the 60 days mandated by section 859b. Moreover, to interpret the second sentence of section 1050.1 as an unlimited ability of the magistrate to continue proceedings to maintain joinder, as the People suggest, would impermissibly deprive the first sentence of the statute of any meaning. [Citation.]" (Ibid.) Accordingly, the court held that the superior court should have dismissed the complaint against Maria Ramos. (Id. at pp. 722-723.) *Page 788 
We agree with the People that section 1382 differs from section 859b in several key ways. First, section 1382, subdivision (a)(2)(B), does not include such explicit "personal waiver" language. Second, section 1382, subdivision (a), does include a "good cause" exception. Thus, there is no question that section 1382 would have allowed Smith's trial to have been continued beyond April 27, as it was before that date, on a showing of good cause. However, there was no attempt to make such a showing. Rather, the court relied solely on its view that the 10-day grace period provided by section 1382, subdivision (a)(2)(B), applied to both Smith and Sims.
Despite the previously noted distinctions,Ramos is instructive on this issue of statutory interpretation. We have similar difficulty reading the relevant statutory language, in this case section 1382, to include an additional, but unwritten, exception. (See People v.Standish, supra, 38 Cal.4th at p. 870 ["the presence of express exceptions ordinarily implies that additional exceptions are not contemplated"]; Ramos, supra,146 Cal.App.4th at p. 729.) Furthermore, as was the case inRamos, rejecting the position advocated by the People here would not unfairly burden the prosecution in future cases. (Ramos, supra, at p. 734.) In this case, on April 27, the People had a choice — proceed to trial against both defendants that day or sever the cases. Severance of Smith's case would not have been required because his codefendant was unavailable or unprepared, but because his own right to a speedy trial would be violated by a further continuance. (See § 1050.1; Ramos, supra, at p. 735.)
In re Samano (1995) 31 Cal.App.4th 984
[37 Cal.Rptr.2d 491] (Samano), provides some support for the People's argument that Sims's request for a continuance should be imputed to Smith.[10] In Samano, a criminal prosecution involving 33 defendants, the magistrate granted the request of two defendants to continue the preliminary hearing so that they could complete review of voluminous discovery and granted the People's motion for a continuance, pursuant to section 1050.1, as to all other defendants. (31 Cal.App.4th at p. 988.) The magistrate also denied two objecting defendants' motions to be released on their own recognizance because the preliminary examination had been continued beyond the 10-court-day limit provided by section 859b. (31 Cal.App.4th at p. 988.) Concluding that section 859b must be harmonized with section 1050.1 in a multiple-defendant case, the majority held that "[t]he request of one properly joined defendant for a continuance of the preliminary *Page 789 
examination with good cause shall be deemed a request of all jointly charged defendants." (31 Cal.App.4th at p. 993.)
The Samano court construed "defendant" in section 859b, subdivision (b)(1), [11] to mean "all jointly charged defendants." (Samano, supra,31 Cal.App.4th at pp. 992-993.) The court observed that section 859b does not speak to the situation of codefendants and reasoned that "it was not the People who initiated the instant dilemma; it was the moving codefendants. That codefendants insisted upon a continuance should not inure to the detriment of the People with the nonmoving codefendants as unintended third party beneficiaries. The People were ready for the preliminary hearing and wanted to go forward, but just once. Section 859b, subdivision (b) is premised on the People as the initiator of the continuance. The People were not required to make any additional showing of `good cause' to continue the preliminary hearing as to the nonmoving codefendants. Section 1050.1 is the equivalent of `good cause.'" (31 Cal.App.4th at p. 989.)
We cannot reasonably construe "the defendant" in section 1382, subdivision (a)(2)(B), to mean "the defendant, or any jointly charged defendant." In Samano, "there [was] no question that the goals of a speedy preliminary hearing, on the one hand, and the joinder and bail provisions, on the other hand, [were] in conflict." (Samano, supra,31 Cal.App.4th at p. 992.) Here, however, sections 1050.1 and 1382 are not necessarily in conflict. Contrary to the People's argument, our interpretation does not "require severance or dismissal whenever the automatic 10-day grace period is invoked by one jointly charged defendant's request for continuance beyond the 60-day period. . . ." Rather, joinder could have been maintained by proceeding to trial on April 27, or on showing of good cause for a further continuance beyond that date.
The delay in bringing this case to trial cannot in any way be attributed to Smith. Smith and his counsel were available and prepared for trial at all times and never wavered in their demand that trial take place within the statutory period. We acknowledge that the People may be placed in the difficult circumstance of being required to proceed on a date certain when delay is caused entirely by a jointly charged codefendant, and not by action or inaction attributable to the prosecution. If the Legislature wishes to address this situation, it must say so. We conclude that the trial court erred by denying Smith's motion to dismiss. *Page 790 
 III. DISPOSITION
The order to show cause, having served its purpose, is discharged, and the petition is granted. Let a peremptory writ of mandate issue directing respondent to vacate its order denying Smith's motion to dismiss in San Francisco Superior Court case No. 207788, entitled People v. Smith, and enter a new and different order dismissing the information pending against Smith. To prevent any further delay of the proceedings below, this opinion shall be final as to this court within five (5) court days. (Cal. Rules of Court, rule 8.490(b)(3).) The previously issued stay shall dissolve on issuance of the remittitur. (Cal. Rules of Court, rule 8.490(c).)
Jones, P. J., and Simons, J., concurred.
[1] Unless otherwise specified, all dates stated herein occurred in the year 2009.
[2] Unless otherwise noted, all further statutory references are to the Penal Code.
[3] It is not clear what occurred on April 22. However, Smith concedes that all continuances up until April 27 were supported by good cause.
[4] Section 1382 has been amended, effective January 1, 2010. (Stats. 2009, ch. 424, § 1.) However, the amendments to the statute have no impact on the issues addressed herein.
[5] No contention was made, for example, that material witnesses were unavailable to the prosecution. (See Peoplev. Shane (2004) 115 Cal.App.4th 196, 203
[8 Cal.Rptr.3d 753].)
[6] Section 1050.1 provides: "In any case in which two or more defendants are jointly charged in the same complaint, indictment, or information, and the court or magistrate, for good cause shown, continues the arraignment, preliminary hearing, or trial of one or more defendants, the continuance shall, upon motion of the prosecuting attorney, constitute good cause to continue the remaining defendants' cases so as to maintain joinder. The court or magistrate shall not cause jointly charged cases to be severed due to the unavailability or unpreparedness of one or more defendants unless it appears to the court or magistrate that it will be impossible for all defendants to be available and prepared within a reasonable period of time."
[7] The Judicial Council recommendation adopted in Senate Bill No. 614 (1959 Reg. Sess.), which added the 10-day grace period now found in section 1382, subdivision (a)(2)(B), did not address the codefendant situation: "It is recommended that the section be amended to provide for dismissal of all cases not brought to trial within the statutory period (unless good cause is shown) except when the defendant has consented to the trial being set beyond the statutory period, and that in the latter situation the case must be dismissed if it is not brought to trial within 10 days after the last date for trial to which the defendant consented. This will clarify the present rule by (a) establishing that dismissal under Section 1382 may be had even though the defendant has previously consented to a delay beyond the statutory period, (b) fixing 10 days as a reasonable time for trial after expiration of the period consented to by the defendant, and (c) eliminating the possibility that delays attributable to a defendant which are wholly within the statutory period may prevent dismissal." (Judicial Council of Cal, Seventeenth Biennial Report (1959) p. 32, italics added; see also Note,Selected 1959 Code Legislation (1959) 34 State Bar J. 581, 717-718 ["[previously, if postponement of a trial was attributable to defendant, his right to a speedy trial was clouded[;] . . . [n]ow, when defendant secures postponement to a date beyond the statutory period of § 1382, the case must be dismissed unless defendant is brought to trial within 10 days after the last date for trial to which he himself has consented"].)
[8] We read Sutton as leaving Arroyo's
holding in this respect undisturbed.
[9] Section 859b provides in relevant part that "[b]oth the defendant and the people have the right to a preliminary examination at the earliest possible time, and unless both waive that right or good cause for a continuance is found as provided for in Section 1050, the preliminary examination shall be held within 10 court days of the date the defendant is arraigned or pleads, whichever occurs later. . . ." The statute further provides that "[w]henever the defendant is in custody, the magistrate shall dismiss the complaint if the preliminary examination is set or continued beyond 10 court days from the time of the arraignment, plea, or reinstatement . . . and the defendant has remained in custody for 10 or more court days solely on that complaint, unless either . . . [¶] (a) [t]he defendant personally waives his or her right to preliminary examination within the 10 court days [or] [¶] (b) [t]he prosecution establishes good cause for a continuance beyond the 10-court-day period." Section 859b also provides: "If the preliminary examination is set or continued beyond the 10-court-day period, the defendant shall be released pursuant to Section 1318 unless: [¶] (1) The defendant requests the setting of continuance of the preliminary examination beyond the 10-court-day period. [¶] (2) The defendant is charged with a capital offense in a cause where the proof is evident and the presumption great. [¶] (3) A witness necessary for the preliminary examination is unavailable due to the actions of the defendant, [¶] (4) The illness of counsel. [¶] (5) The unexpected engagement of counsel in a jury trial. [¶] (6) Unforeseen conflicts of interest which require appointment of new counsel." Section 859b finally provides: "The magistrate shall dismiss the complaint if the preliminary examination is set or continued more than 60 days from the date of the arraignment, plea, or reinstatement of criminal proceedings . . ., unless the defendant personally waives his or her right to a preliminary examination within the 60 days." (Italics added.)
[10] Samano was not cited by the People. Instead, the People rely on cases that do not address the impact on an objecting defendant of a request for continuance made by a jointly charged codefendant. (See Barsamyan v. AppellateDivision of Superior Court (2008) 44 Cal.4th 960, [81 Cal.Rptr.3d 265, 189 P.3d 271]; Johnson, supra,26 Cal.3d 557; Townsend v. Superior Court (1975)15 Cal.3d 774 [126 Cal.Rptr. 251, 543 P.2d 619].) None of these cases suggest that Sims's counsel could give valid consent, pursuant to section 1382, subdivision (a)(2)(B), on behalf of Smith, who was represented by independent counsel.
[11] Section 859b, subdivision (b)(1), provides: "If the preliminary examination is set or continued beyond the 10-court-day period, the defendant shall be released pursuant to Section 1318 unless: [¶] (1) The defendant
requests the setting of continuance of the preliminary examination beyond the 10-court-day period." (Italics added.) *Page 791